**CIRCUIT COURT OF THE CITY OF NORFOLK**

Edmond Turner

v.

Tidewater Regional Transit et al.

Case No. (Chancery) C-86-703

Joyce A. Pugh

v.

Tidewater Regional Transit et al.

Case No. (Chancery) C-86-704

Alford A. Allen

v.

Tidewater Regional Transit et al.

Case No. (Chancery) C-86-705

December 12, 1986

By JUDGE WM. MOULTRIE GUERRY

The court has reviewed the very helpful briefs filed by counsel in the above matters, which were consolidated for trial, and has carefully considered the testimony given at the hearings on October 21, 22 and 23, 1986.

The court is of the opinion that the petition for

the injunction and other relief requested by the Plaintiffs should be denied and the bills of complaint dismissed.

The Plaintiffs have failed to sustain the burden of proof to establish that the transportation system operated by the Defendants discriminates against the handicapped and disabled or that the "special transportation services" (STS) are inadequate for their needs under the requirements of "The Virginians with Disabilities Act," Code of Virginia, §§ 51.01-1 through 51.01-46, enacted in 1985. The testimony presented by the parties was lengthy and detailed, and where it was in conflict, the court resolves the issues of credibility in favor of the Defendants.

The Plaintiffs testified and offered other evidence, which consisted mostly of recitations of isolated incidents and complaints about the defendants' Special Transportation Services (STS) for the handicapped. The Plaintiffs failed to present any significant expert testimony that tended to support the Plaintiffs' contentions or prove that the services provided by the Defendants unfairly discriminated against the disabled or expressly violated the terms of the above legislation.

On the other hand, the testimony of James C. Echols, Executive Director of the Tidewater Transportation District Commission, was impressive and established that the Defendants are making a continuing and concerted effort to provide safe and improved transportation services to the disabled in the Tidewater area. Mr. Echols emphasized that the Commissioners every year consider the question of transportation for the handicapped,. There was testimony that equipping fixed route buses with lift equipment for the handicapped would add about $10,000 to $15,000 to the cost of each bus to be purchased in the future. For a fleet of 200 new buses, this would add to the cost in excess of $2,500,000 over the next ten to twelve years, and the additional maintenance was estimated at about $100,000 per year.

The Defendants have met the needs of the handicapped with fifty lift equipped vans called Handi-Ride service, which take riders door to door and have schedules and "daily runs" for regular riders who work or ride the bus every day. This is supplemented by the Maxi-Ride van service.

Evidence was presented also that the ridership by the handicapped is about 1.3 percent of the total of about 14,000,000 riders a year. The cost for the handicapped was about $1,500,000 which is about 9.3 percent of the total expenditures of about $18,000,000 and results in about 17.9 percent of the total deficit. The federal regulations issued by the Department of Transportation require that three percent of the operating costs of a system be allocated for the handicapped, but the Defendants' expenditures in the Tidewater area are over *three* times that level.

The Commissioners, two appointed from each of the five Tidewater cities, have deliberated and considered these matters and have made a decision, and the Court cannot say that they have acted arbitrarily or unreasonably when they determined the best way to serve the handicapped community.

It appears that this is the first case brought in Virginia under the above legislation, and the attorneys have been unable to cite any helpful Virginia authority. The test is found in Paragraph B of § 51.01-44 of the Code. It is there stated "A person with a disability is entitled to *full* and *equal* accommodations. . . of all common carriers. . ." and a decision turns on whether this means the "same" accommodations. It seems apparent that the "same" accommodations cannot be provided on a practical basis and that a different system must be used. Any other interpretation of Paragraph B would render Paragraph C meaningless where it is clearly stated that a transportation district commission has an option or choice of *either* using (i) the same carriers or (ii) providing "paratransit or special transportation service" or (iii) both in a *dual* system.

The Defendants have made a careful and rational decision to provide equal accommodations for the handicapped and disabled in its area through the use of "special transportation services" (STS) in accordance with the statute and have done as permitted in Paragraph C.